## CIRCUIT COURT OF FAIRFAX COUNTY

MRO Mid-Atlantic Corp.

v.

Interstone/CGL Partners, L.P.

August 19, 1997

Case No. C148989

BY JUDGE LESLIE M. ALDEN

This matter came before the Court on June 13, 1997, upon Defendant's Demurrer, Plaintiff's Opposition thereto, and Defendant's Reply to the Opposition. At the hearing, the Court took under advisement the following issues: (I) whether the terms of the Lease required Defendant Interstone/CGL Partners, L.P. ("Interstone") to approve the proposed assignment by Plaintiff MRO Mid-Atlantic Corp. ("MRO") to McDonald's Corporation, (II) whether Interstone was estopped from arguing that its basis for denial of the assignment at issue was because it "amended" the Lease, (III) whether a cause of action for tortious interference was properly alleged in the Motion for Judgment, and (IV) whether there were any facts in dispute which would prevent the Court from entering a final disposition on this case as a matter of law.

As explained below, the Court finds that Interstone is not required to approve the proposed assignment by MRO, Interstone is not estopped from asserting additional arguments, and tortious interference is not properly alleged in this case. Accordingly, the Demurrer is sustained as to each Count.

### Factual Background

MRO and Interstone are successors to Marriott Corporation and Hollinswood Associates, respectively, who executed a 100 year lease in 1979 ("Lease"). In the Lease, tenant Marriott agreed to occupy commercial property

owned by landlord Hollinswood. Marriott agreed to operate a Roy Rogers restaurant on the demised premises, which adjoined property upon which a hotel was to be constructed. Paragraph 4 of the Lease provides:

### 4. *Use of the Demised Premises*

A. The demised premises may be used solely for the purpose of operating a "Roy Rogers Restaurant" facility substantially similar to that being currently operated by Tenant on the demised premises, and any other commercial or retail use, so long as such is consistent with the best interest, as more fully described in subparagraph B below, of the hotel to be constructed on the adjoining property, as more fully described in subparagraph below.

B. Landlord and Tenant acknowledge that Landlord intends to construct on the property adjoining the demised premises a first class commercial hotel facility. Tenant covenants and agrees that during the term hereof, it shall not use the demised premises in a manner detrimental to or which will interfere in any way with Landlord's use of the adjoining property. In furtherance, but not in limitation of the said covenant, Tenant agrees that it shall not use the demised premises in such a way as to compete with Landlord's use and that it will not use the demised premises in an unattractive or disreputable manner or construct on the demised premises improvements which will detract from the appearance of the adjoining property or materially interfere with the view from landlord's proposed improvements. Tenant further covenants and agrees that the appearance of the demised premises and the deportment of personnel employed therein, as well as the nature and subject matter of all displays, advertising, and products offered for sale will be consistent with this Paragraph 4.

Under the terms of the Lease, the tenant agreed to pay the landlord $35,941.20 per month for twenty years and $1.00 per month for the remaining eighty years of the Lease term. *See* Motion for Judgment, Exhibit ("Ex.") 1.

After MRO and Interstone acquired their respective interests in the Lease, MRO sold the Roy Rogers restaurant to McDonald's Corporation; however, pursuant to the Lease, MRO needed Interstone's consent to assign the Lease to McDonald's. *See* Lease paragraph 13. Paragraph 13 sets out when assignment and subleasing are permissible. Paragraph 13.A affords the Tenant the right to assign the Lease to:

any corporation wholly owned by or affiliated with the Tenant, or to a corporation resulting from the merger or consolidation of the Tenant, or to a corporation resulting from the sale of the entire business of the Tenant ... .

The Tenant may also assign the Lease to non-affiliated entities as long as the assignment comports with the terms of Paragraph 13.C. Paragraph 13.C of the Lease provides:

> Tenant shall have the right to assign this Lease ... subject to the provisions of this [paragraph]. Prior to such assignment, Tenant shall provide Landlord with a fully executed copy of said assignment which shall contain the full and complete agreement between the parties thereto ... . Landlord shall have the right to disapprove said proposed assignment only if, in its *reasonable judgment*, the *proposed assignee* would not be capable of satisfactorily complying with the provisions of Paragraph 4 hereof. [Emphasis added.]

MRO presented Interstone with the proposed assignment ("P.A."). *See* Motion for Judgment, Ex. 2, "Assignment of Lease." Interstone refused to consent to the P.A. In a letter to MRO, Interstone cited Section 4 of the Lease as grounds for rejecting the P.A.

In response to Interstone's rejection of the P.A., MRO filed this Motion for Judgment, seeking in Count I a declaratory judgment that Interstone must consent to the P.A. to McDonald's, alleging in Count II a breach of contract for Interstone's failure to do so, seeking in Count III Interstone's specific performance of the covenants in the Lease, and alleging in Count IV that Interstone has tortiously interfered with the expectations of MRO; MRO also seeks recovery of its attorney's fees.

MRO's successful pursuit of these claims depends upon whether Interstone was obliged by the Lease terms to consent to the P.A. In its Memorandum of Law in Support of its Demurrer to the Motion for Judgment ("Demurrer"), Interstone argues that it is not obligated to approve the assignment because the proposed transaction (1) does not conform with the requirements of Paragraph 13 of the Lease and (2) is actually an amendment to the Lease rather than a mere assignment. MRO disputes these contentions, claiming that the proposed assignee can comply with the provisions of Paragraph 4 of the Lease and, accordingly, the Lease affords no other basis for Interstone to reject the P.A.

*Legal Arguments*

I. *Whether the terms of the Lease required Interstone to approve the proposed assignment by MRO.*

For the following reasons, the Court finds that the P.A. exceeded the scope of permissible assignments as agreed to by the parties and as provided in the Lease, and thus, Interstone is under no obligation to approve the P.A.

The Lease signed in 1979 governs the parties' rights and obligations with respect to assignments and subletting. Paragraph 13 of the Lease sets out the circumstances under which an assignment of the Lease is permitted. Pursuant to the provisions relevant here, MRO has the ability to assign the Lease to McDonald's only with Interstone's acceptance. Lease paragraph 13.C, *supra.* Interstone may disapprove a proposed assignment if, in its reasonable judgment, the proposed assignee is not capable of complying with the Lease provisions outlining how the tenant may use the property. *Id.* Among other things, the Lease provides that an assignment, if otherwise permitted, shall not be construed as a waiver of MRO's duty to obtain Interstone's consent to any subsequent assignments. Paragraph 13.E provides:

> In the event of a permitted assignment or subletting hereunder, such assignment shall not be construed as a waiver of the duty of the Tenant (or the permitted assignee . . .) to obtain from the Landlord consent to any other subsequent assignment or subletting ... . Any such permitted assignment or sublease shall be upon and subject to all of the provisions, terms, covenants, and conditions of this Lease, and any permitted assignee or sub-tenant shall continue to be and remain liable thereunder.

These are the requirements of the Lease governing assignments.

However, the P.A. submitted by MRO was impermissible because it did not conform to these requirements of the Lease. By its express terms, the P.A. sought to eliminate Interstone's right to approve subsequent assignments of the Lease. Paragraph 3(a) of the P.A. states that the landlord's "consent shall not be required for any assignment, sublease, or other transfer to a franchisee or wholly-owned subsidiary of Assignee." Clearly, Interstone had no obligation under the terms of the Lease to accept such a proposal. Indeed, such a proposal directly contravenes Interstone's reserved rights under the Lease. Moreover, MRO is manifestly precluded by the Lease from making an assignment such as that proposed. According to § 17(A)(iii) of the Lease, an

event of default is defined as an attempt to assign the Lease in a manner that does not conform to the requirements of Paragraph 13. Arguably, by tendering the P.A. and insisting upon it, MRO's conduct constitutes an event of default under the Lease. In any event, the P.A. does not comport with the requirements of an assignment under the Lease, and Interstone is not obligated to accept it. To the extent the P.A. can be described as a unilateral amendment to the Lease, nothing in the Lease requires Interstone to approve it.

II. *Whether Interstone is estopped from arguing that it is not required to approve the proposed assignment because the assignment operates as an amendment to the Lease that need not be accepted.*

Interstone's initial rejection of the P.A. was "based on the fact that the proposed assignee is not capable of satisfactory complying [sic] with the provisions of Section 4 ... ." December 3, 1996, Letter from Interstone to MRO. In its pleadings filed in this Court, Interstone argued that it rejected the P.A. because it effected an amendment to the Lease and because it derogated Interstone's rights under the Lease.

MRO argues that Interstone is estopped from asserting any justification for its rejection other than that raised in its December 3, 1996, letter to MRO. In support of its estoppel argument, MRO relies on cases decided by the Fourth Circuit Court of Appeals. *Fruit Growers' Express Co. v. Plate Ice Co.*, 59 F.2d 605 (4th Cir. 1932); *Chevrolet Motor Co. v. Gladding*, 42 F.2d 440 (4th Cir. 1930); *Luckenbach S.S. Co. v. W. R. Grace & Co.*, 267 F. 676 (4th Cir. 1920). According to MRO, these cases establish that a party who relies on a certain reason for refusing to perform a contract may not raise a different defense when later sued on a claim of nonperformance.

None of the cases cited by MRO, however, involve Virginia statutes or cite to specific Virginia case law. Moreover, the facts of each of the cases relied upon by MRO are clearly distinguishable from the case before the Court. *Fruit Growers' Express Co.* involves a North Carolina corporation seeking recovery from a Delaware corporation for breach of a sales contract where the place of delivery is at issue. In *Chevrolet Motor Co.*, which cites primarily District of Columbia and Maryland law, at issue is a contract for the sale of cars and parts and whether the contract lacks mutuality or consideration. In *Luckenbach S.S. Co.*, a Connecticut corporation sued a Delaware corporation over the validity of a contract executed by the two parties; at issue was the defense of "want of mutuality" and whether the terms of the shipping contract were affected by a Declaration of War. To the extent these cases correctly reflect the law regarding estoppel, the Court finds that it simply does not

apply to the facts of this case. Rather, Paragraph 17.G of the parties' Lease resolves the dispute over the issue. That paragraph provides:

> The exercise by Landlord of any one or more of the rights or remedies provided for in this Lease ... shall not preclude simultaneous or later exercise by Landlord of any or all other rights or remedies provided for in this Lease or now or hereafter existing at law or in equity or by statute or otherwise.

The parties to the Lease agreed that the landlord would not be barred from exercising its rights, including raising all available defenses under the Lease, when necessary. Where a contract provides bargained-for protection, a party is not estopped from invoking that protection to his benefit. *See Spotsylvania County v. Seaboard Surety Co.*, 243 Va. 202, 216-17 (1992).

Further, the Court finds that Interstone's position in this litigation is not inconsistent with its position at the time of the rejection of the P.A. Given that the P.A. was contrary to the Lease and provided for Interstone's consent to and acceptance of unidentified and unknown future assignees, Interstone was permitted under the Lease to disapprove the P.A. MRO has not alleged facts in the Motion for Judgment to support a claim that Interstone's disapproval of the P.A. under these circumstances was a violation of Interstone's obligation to exercise its reasonable judgment in considering the P.A. Nor has MRO alleged facts which suggest that Interstone acted unreasonably in concluding that an unidentified assignee could not perform satisfactorily the Lease obligations contained in Paragraph 4. Thus, if estoppel were to prevent Interstone from asserting arguments beyond those initially raised, Interstone is not precluded from advancing extensions, or other aspects, of its earlier arguments.

### III. *Whether a cause of action for tortious interference was properly alleged in the Motion for Judgment.*

Interstone additionally argues that the claim for tortious interference with a prospective business relationship will not lie because MRO claims recovery under a breach of contract theory for the same acts. To properly state a claim for tortious interference with a prospective business relationship, MRO must demonstrate:

> (1) the existence of a business relationship or expectancy, with a probability of future economic benefit to plaintiff; (2) defendant's

knowledge of the relationship or expectancy; (3) a reasonable certainty that absent defendant's intentional misconduct, plaintiff would have continued in the relationship or realized the expectancy; and (4) damage to plaintiff.

*Commercial Business Systems, Inc. v. Halifax Corp.*, 253 Va. 292 (1997). As Interstone's disapproval of the P.A. is the only misconduct alleged by MRO and given the Court's decision that Interstone was entitled under the lease to reject the P.A., there can be no finding of misconduct on these facts. Accordingly, MRO's claim of tortious interference must fail because, as a matter of law, MRO has not stated all elements of the tort.

IV. *Whether there were any facts in dispute which would prevent the Court from entering a final disposition on this case as a matter of law.*

The parties seem to agree that there exist no material facts in dispute regarding the issues presented by the Demurrer. However, as the Demurrer is sustained as to all counts and as to MRO's prayer for attorney's fees, MRO may have leave to amend the motion for judgment within twenty-one days of August 8, 1997.